## DURHAM LOAN & TRUST CO. et al. v. CHAMBERS.

(Circuit Court of Appeals, Fourth Circuit. June 21, 1926.)

### No. 2418.

**1. Bankruptcy ⬱166(5).**

If trust company, in taking deeds of trust from bankrupt was merely agent for bank which was real beneficiary, legal effect would be the same as if bank took deeds, and would constitute voidable preference, if either bank or trust company had reasonable ground to believe bankrupt was insolvent.

**2. Bankruptcy ⬱175.**

If purpose of trust company in taking deeds of trust was knowingly to aid bankrupt in giving bank forbidden preference, deed would be voidable, although not preference.

**3. Bankruptcy ⬱166(4).**

Trustee in bankruptcy may recover money paid to bank by trust company at direction of bankrupt, if bank knew, or had good reason to believe, that bankrupt was insolvent and payments would work a preference.

**4. Bankruptcy ⬱303(3).**

Evidence showing trust company took deed of trust from bankrupt as security for loan, proceeds of which were paid to bank having same president as trust company, *held* insufficient to support decree setting aside deeds of trust.

**5. Courts ⬱406(1).**

Ordinarily, in equity case Circuit Court of Appeals must find for itself what facts, if any, were sufficiently established to justify relief.

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Raleigh, in Bankruptcy; Isaac M. Meekins, Judge.

Bill in equity by S. C. Chambers, as trustee in bankruptcy of C. W. Andrews & Brothers, Inc., bankrupt, against the Durham Loan & Trust Company and others, to set aside two deeds of trust. From a decree setting aside the deeds, defendants appeal. Decree set aside, and cause remanded.

J. Crawford Biggs, of Raleigh, N. C., and W. J. Brogden, of Durham, N. C. (S. C. Brawley, of Durham, N. C., on the brief), for appellants.

R. H. Sykes, of Durham, N. C., and W. B. Councill, of Hickory, N. C., for appellee.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. This proceeding was begun by a bill in equity to recover certain payments alleged to have been preferential and to set aside two deeds of trust. It was filed by S. C. Chambers, trustee in bankruptcy of C. W. Andrews & Bros., Inc., a bankrupt corporation, against the Home Savings Bank, the Durham Loan & Trust Company, and E. J. Hill, trustee, under the deeds attacked. For brevity, these persons and corporations will be referred to as the trustee, the bankrupt, the bank, the trust company, and E. J. Hill, respectively.

The bankrupt was a corporation formed in 1920 to take over the business of the Andrews whose name it bears. He held all of its stock, except some $700 owned in varying amounts by his father, his brother, and another member of his family. It was a borrower from the bank, and prior to the 21st of July, 1922, owed the latter something over $19,000 on notes indorsed by the father. By that time, as we now know, the bankrupt's financial condition was bad. There was on record a mortgage from it for some $1,300 representing a part of the purchase money of the land, as well as four other mortgages aggregating some $4,000 or more for machinery or equipment purchased by it. On the 15th of July three separate suits upon overdue accounts were brought by mercantile concerns against it. None of them was defended, and they resulted, some two months later, in judgments for an aggregate amount somewhat in excess of $4,000. In July the bank was pressing for the payment of the notes. The bankrupt asked its counsel, a gentleman who now appears for the trust company, to secure elsewhere a loan sufficient to pay them. He was not called as a witness by either side, and the loan was actually solicited from the trust company by E. J. Hill, a practicing lawyer and a brother of a gentleman who was president both of the bank and of the trust company. Before the hearing below, he had been paralyzed, and his testimony was not taken. According to the evidence of the cashier for the trust company who acted for it in the transaction, Mr. Hill came to him and asked him for a loan to be secured by the indorsement of the elder Andrews and by a mortgage upon the entire plant of the bankrupt subject to a prior claim for the purchase money mortgage already mentioned. The cashier says at the time he talked the matter over with the loan committee of the trust company they es-

timated the plant to be worth from $30,000 to $40,000, and the elder Andrews to be good for $20,000 to $35,000. The trust company did not require any examination of the title, nor any search of the court records to find out whether there were any suits against the bankrupt or not. Its cashier did not inspect the plant otherwise than by looking at it from a distance of a couple of hundred feet while from time to time he was on his way to or from a golf course. He never saw its books. He says something about having seen a statement of the bankrupt's condition showing it to be solvent, but the testimony is that such statement was not exhibited to him until after the transaction was completed. It is admitted that on July 21st, when the first deed of trust which it purported to secure was executed, the $15,000 was not paid over to the bankrupt, but was, by direction of Mr. E. J. Hill, who solicited the loan for the bankrupt, placed on the trust company's books to the credit of the bank, and a duplicate deposit slip showing that such amount had been deposited to the credit of the bank was given Mr. Hill. The bank returned to the bankrupt its note for a like amount.

It would appear from the testimony that at that time some $4,500 or more of the loan from the bank was not due. The next month, on the 22d of August, and apparently without any further examination, the trust company, on a second deed of trust, loaned the bankrupt an additional $4,618. This loan was made, not by giving a check to the bankrupt, but was handled like the $15,000. It was for the exact amount still due the bank.

In the mercantile creditors' suits already mentioned, judgments were due on the 13th of September. On the 11th, two days before the elder Andrews, at the instance of his son, filed a bill in the state court for a receiver, and one was duly appointed. This official seems to have disposed of practically all the property not covered by the deeds of trust requiring all of it, except $8.03 to pay the expenses of the receivership. An involuntary petition for adjudication in bankruptcy was filed against the bankrupt on the 28th of October, and adjudication thereon followed on the 20th of November. In addition to the few dollars turned over by the receiver, the trustee succeeded in collecting from the book accounts $6.93. Other than these trifling sums aggregating $14.96, the only property which came to the trustee, was covered by the deeds of trust. After considerable advertising, it was sold at auction for $15,000. The prior specific liens on the property, some or all of which have been mentioned, were paid under orders of the court, leaving in the hands of the trustee a balance of $10,700. It should be said that the common president of the bank and the trust company was out of town at the times the loans were made, and the evidence is that he knew nothing about them.

The trustee in his bill of complaint prayed that the deeds of trust be declared null and void, and the proceeds derived from the sale of the property covered by them be applied to the payment of all creditors of the bankrupt in proportion to their claims, and that the payments to the bank of the sums of $15,000 and $4,618, respectively, be declared a preference, and that the bank be required to repay them to the trustee, and for other and further relief.

[1, 2] By the decree from which the trust company appeals, the learned court below found that the trust deeds covered all of the bankrupt's property; that at the time of their execution and delivery the bankrupt was insolvent, and the trust company was in possession of sufficient facts to put it upon inquiry as to the solvency of the bankrupt. It was thereupon adjudged that the deeds were void, and that the net proceeds of the property once covered by them belonged to the trustee. Prior to the time at which the deeds were made, the trust company was not a creditor of the bankrupt, and it had, therefore, no claim which could have been preferred. The only assumption upon which the giving of these deeds could of itself have been a preference was that in their taking the trust company was not acting for itself in any real sense, but was merely an agent for the bank, which was to be the real beneficiary of them. In that event their legal effect would have been precisely the same as if they had been made directly to the bank, and, if either the bank or the trust company, as its agent in the matter, had at the time reasonable ground to believe that the bankrupt was insolvent, and that the making of the deeds would secure to the bank a larger proportion of its claim than other creditors would receive, they would have constituted a voidable preference, as the court below adjudged they did. Even without being preferences, they would have been voidable if in taking them the purpose of the trust company was knowingly to aid the bankrupt in giving the bank a forbidden preference. Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419.

[3] If the trust company was neither the agent of the bank, nor knowingly co-operating with the bankrupt to secure a preference for the bank, the deeds themselves would be unassailable, and the trust company would be

entitled to the proceeds of the property once covered by them. Even in that event, however, the trustee would not necessarily be without remedy against the bank, a phase of the cause which has not yet been disposed of by the court below, for, while no decree has been in terms made against the bank, the bill as to it has not been dismissed. Moreover, as has already been pointed out, the finding of the court that the trust deeds are preferences can be true only upon the assumption that the bank was preferred. If the facts were that the trust company, by direction of the bankrupt, actually paid its own money to the bank, and the bank, when it received it, knew, or had good reason to believe, that the bankrupt was insolvent, and that such payments would work a preference to it over the other creditors of the bankrupt, the trustee is entitled to a decree against the bank requiring it to pay to him the two sums of $15,000 and $4,618.

[4, 5] From what has been said, it is apparent that the facts expressly found below are not in themselves sufficient to support the decree actually made. The learned judge may have assumed that they were implied in what he found and in the relief he gave, but he may not. This is an equity cause, and ordinarily it would be our duty from the record before us to find for ourselves what facts, if any, had been sufficiently established to justify relief.

The instant case is, however, peculiar in this, that there seems throughout its progress to have been some confusion or misapprehension which may have diverted attention from the essential issues involved and from the facts necessary to support them. It is, moreover, one in which a trier of fact who sees and hears the witnesses has a great advantage over those who do not.

For these reasons, we have concluded to set aside the decree below and to remand the cause, so that the court below, upon the evidence already heard, and upon any other which may be offered by any of the parties or required by it, may find whether the payments to the bank constituted a voidable preference, whether the trust company in accepting the deeds of trust was acting for itself or merely as agent for the bank, or, if acting for itself, whether it was knowingly co-operating with the bankrupt to secure a forbidden preference to the bank, as well as any other facts which may be relevant and material, and to enter a proper decree thereon.

To prevent any possibility of misunderstanding, we may add that we regard all the original parties, including the bank, as still before the court. The cause is therefore remanded for further proceedings in accordance with this opinion.

Remanded.

WADDILL, Circuit Judge (concurring). I concur with the majority in that the cause should be remanded to the District Court with a view of a further and final hearing thereof. The decision of that court makes it entirely clear that the decree appealed from was predicated upon the fact that an unlawful preference was attempted and made by the execution of the two trust deeds in favor of the Durham Loan & Trust Company, assailed in the proceedings, and the same were accordingly set aside; whereas the case was not one of unlawful preference at all, nor one to which that doctrine had application. There was no indebtedness existing between the trust company and the bankrupt on account of which a preference could be effected; on the contrary, the transaction was a cash one, in which the trust company loaned and paid, to and on account of the bankrupt company, the sum of $19,500 in cash, to secure the payment of which the two liens assailed as preferences were executed.

The doctrine controlling preferences, such as the insolvency of the bankrupt, and the knowledge of the lender, the trust company, of the fact that its lien would take precedence over other creditors of the bankrupt not specifically secured, has no application here. Of course, if the two mortgages in favor of the trust company were not of the character indicated, and on account of which the trust company paid, to and for the bankrupt, the amount secured, but, on the contrary, were mere makeshifts, entered into collusively with the bankrupt with a view of covering up its property from its creditors, the same would be invalid; but, as I understand this case, neither from the pleadings nor the proof adduced, does it belong to the latter class of transactions, and hence the decree of the lower court should be reversed, and a decree directed in favor of the trust company. But, while all this is true, and the result last mentioned would ordinarily follow, it does appear in this case that there was some misapprehension as to the character of the case and what could be done in the premises; moreover, it appears that the question of whether or not a preference was given the Home Savings Bank, by reason of the payment to it of its indebtedness, out of the funds borrowed from the trust company, was not passed upon—all of which makes it desirable that the District Court should act anew in the light of the law

as indicated herein, and upon a full consideration of the merits of the controversy, having regard to the rights of all the parties in interest.